IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

EDDIE COTTON,

                              Plaintiff,

          vs.                                        Civil Action No.
                                                     3:04-CV-1247 (LEK/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

EDDIE COTTON, *pro se*


FOR DEFENDANT:

HON. GLENN T. SUDDABY              WILLIAM H. PEASE, ESQ.
United States Attorney             Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York  13261-7198

OFFICE OF GENERAL COUNSEL          BARBARA L. SPIVAK, ESQ.
Social Security Administration     Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278                 KAREN M. ORTIZ, ESQ.
                                   Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Eddie Cotton, who suffers from various physical conditions including, principally, degenerative disc disease of the lumbar spine area, has commenced this proceeding pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final determination of the Commissioner denying his application for disability insurance Social Security benefits.  That denial was based upon an assessment by the assigned Administrative Law Judge ("ALJ") that while plaintiff suffers from a medically determinable impairment which could be characterized as severe, he nonetheless retains the capacity to perform certain skilled jobs entailing only sedentary exertional requirements, and, according to the opinion testimony elicited from a vocational expert, there are jobs in sufficient numbers in the national and local economy capable of being performed by the plaintiff, notwithstanding his exertional and nonexertional limitations.  In making that finding the ALJ discounted plaintiffs' subjective testimony regarding the limitations resulting from the pain which he experiences and the medications prescribed to address it, as well as somewhat contradictory opinions of plaintiff's treating physician.

Having reviewed the record, though without the benefit of a brief

2

from the plaintiff illuminating the arguments in support of his challenge, I

find that the Commissioner's determination resulted from the application of

proper legal principles, and is supported by substantial evidence in the

record.

I.    BACKGROUND

Plaintiff was born on November 21, 1953; at the time of the

administrative hearing in this matter, he was fifty years of age.

Administrative Transcript at pp. 37, 155.[1]  Cotton is married, and lives in a

house in South New Berlin, New York.  AT 37-39, 155.  Plaintiff appears

to be well educated, having earned a masters degree in an unspecified

area.  AT 155.  Prior to November 19, 2001, and dating back to January of

1982, plaintiff was employed by the New York City Police Department.[2]

AT 53, 155.

Plaintiff ceased working in November of 2001 as a result of back

pain the origin of which he traces back to an accident that occurred in

---

[1]    Portions of the administrative transcript (Dkt. No. 8), filed by the Commissioner together with his answer in this action, will hereinafter be cited throughout this opinion as "AT ___".

[2]    Plaintiff's employment records actually reflect that the termination of that employment did not occur until February of 2002.  AT 53, 155-56.  During the hearing, plaintiff explained that he has not worked since November 19, 2001, and from that time until February, 2002 was on sick leave.  *Id.*

October of 1998, when he fell several feet from a tree stand while hunting.[3]  AT 86, 102, 156.  Following his fall, plaintiff sought and received emergency room treatment at The Hospital, located in Sidney, New York. AT 86-91.  Upon examination at that facility, plaintiff was diagnosed as suffering from multiple abrasions and a soft tissue injury to the right shoulder.  AT 87.  X-rays of plaintiff's right shoulder, however, revealed no fractures, and he was therefore discharged with directions to follow-up with his primary care physician.  AT 87, 91.

In October of 1998, Cotton consulted with his treating physician, Dr. N. Ramsaroop, who practices with the Queens-Long Island Medical Group, P.C., recounting his accident and complaining of right neck and shoulder pain.  AT 143-44.  Dr. Ramsaroop noted that plaintiff was experiencing muscle spasm, prescribed Flexeril for pain, and advised him to schedule a follow-up appointment in three months.  AT 144.

Plaintiff's next reported visit to Dr. Ramsaroop was not until some ten months later, in August of 1999, when he appeared for treatment of bronchitis.  AT 142.  During that visit Cotton also reiterated his complaints

---

[3]  Plaintiff has given various estimates as to the extent of his fall.  *See*, *e.g.*, AT 156 (hearing testimony, to the effect that the fall was forty feet); AT 102 (advising examining physician that the fall was thirty feet); AT 86 (emergency room records, reflecting a fall of seventeen feet).

4

of low back pain, for which another prescription for Flexeril was given.  AT 142.  While her notes do not reflect a reason for the change, in December of 1999, Dr. Ramsaroop prescribed Vicodin, presumably also to address plaintiff's ongoing back pain.  AT 141.

Plaintiff's medical records reveal periodic visits by him to Dr. Ramsaroop over the ensuing years; several of those visits do not appear to relate to his hunting accident and resulting back pain.  During those sessions, which came at varying intervals of between five and ten months, Cotton was treated for bronchitis, low back strain and muscle spasm, in August of 1999 (AT 142); in February of 2000, for chronic low back pain radiating to his left leg (AT 140); for left elbow tendinitis and chronic fatigue, in September of 2000 (AT 137-39); in February of 2001, entailing a physical examination, with the only recorded recommendation addressing plaintiff's left elbow tendinitis (AT 136); in October of 2001, for persistent chest pain (AT 134); for complaints of discoloration of the tongue and loss of taste in May of 2002 (AT 132); in October of 2002, for a routine medical examination during which plaintiff voiced no medical complaints (AT 131); in April of 2002, seeking medical clearance to become a police force trainer in Kosovo (AT 130); and on September 11,

2003, complaining of a posterior thigh pain later diagnosed as a possible hamstring strain (AT 128-29).

Magnetic resonance imaging ("MRI") testing of the plaintiff's lumbar region was conducted on September 22, 2003.  AT 114.  The results of that testing were recorded as "[d]egenerative disc disease" and "circumferential degenerative disc bulge L5-S1[,]" and it was noted that there was "[n]o apparent impingement of the nerve roots or spinal canal stenosis."  *Id.*; *see also* AT 124-25.

Based upon the course of her treatment of the plaintiff, Dr. Ramsaroop, responding to a questionnaire from the state disability agency, opined that plaintiff can occasionally lift ten pounds, is capable of standing for less than two hours per day, and can sit for less than six hours in a day.[4]  AT 110.  In June of 2004 Dr. Ramsaroop, who had last treated the plaintiff some three months earlier, completed a functional capacity evaluation further addressing plaintiff's limitations.  AT 146-51.  In that evaluation Dr. Ramsaroop specifically noted that her impressions were based upon a combination of subjective and objective criteria, and that the objective input consisted of the results of plaintiff's MRI testing on

---

[4]    In her response to that questionnaire, Dr. Ramsaroop also completed a chart noting certain deficiencies in plaintiff's ranges of motion.  AT 112-13.

September 22, 2003.  AT 146.  Dr. Ramsaroop opined that plaintiff is unable to sit or stand for long periods of time, is required to lie down for forty minutes to relieve pain, and could be expected to miss work approximately fifty percent of the time due to his impairments.  AT 147.  That evaluation also went on to reflect that plaintiff suffers from chronic/severe pain, and that his medical condition severely impairs his ability to concentrate, be consistent, and sustain a work pace.  AT 148.

At the request of the agency, plaintiff was orthopedically examined on September 16, 2003, by Mark Henderson, D.O.  AT 102-06.  Based upon that examination, Dr. Henderson concluded that the plaintiff "appear[ed] to be in some degree of pain during the exam", and discerned a "decreased [range of motion] in the lumbar spine . . . as well as evidence of lumbar spasm and right sacroiliac joint dysfunction."  AT 103, 105.  Dr. Henderson further concluded that plaintiff "did have a mild weakness in the entire right lower extremity [and that] [c]ertainly the possibility of discogenic disease does exist."  AT 105.  Dr. Henderson went on to note that plaintiff  "did have some sensory loss in the distal right lower extremity."  *Id.*  Based upon his findings, Dr. Henderson opined that plaintiff is markedly restricted for heavy lifting and carrying, and

"moderately restricted for any prolonged standing, prolonged walking, as well as squatting and . . . for prolonged sitting."  AT 105.

On November 4, 2003, orthopedic surgeon Dr. Sury Putcha, a non-examining state agency review physician, completed a residual functional capacity assessment in which he opined that plaintiff is capable of lifting up to fifty pounds occasionally and twenty-five pounds frequently; can stand and/or walk, and sit, for approximately six hours out of an eight hour work day; and is otherwise unlimited in his ability to push and/or pull.  AT 117.  Dr. Putcha also opined that the severity of plaintiff's reported symptoms was only "partly credible", AT 119, and that Dr. Ramsaroop's noted limitations, to the effect that he is capable of lifting only up to ten pounds and sitting for less than six hours, and standing less than two, were not well supported by the medical evidence in the record, AT 120.

During the hearing in this matter, plaintiff testified regarding his daily activities.  Plaintiff, who lives with his wife and son, is able to bathe, dress, and shave, and occasionally to cook.  AT 158.  Plaintiff also testified that he goes to the movies with his son, but that while he formerly enjoyed hunting and fishing he can no longer do either.  *Id.*

II.   <u>PROCEDURAL HISTORY</u>

A.    Proceedings Before The Agency

Plaintiff filed an application for disability insurance benefits with the agency on September 4, 2003, alleging a disability onset date of November 19, 2001.  AT 37-39.   Following the initial denial of that application on November 7, 2003, AT 22-25, a hearing was conducted, at plaintiff's request, on July 6, 2004 before ALJ David Antrobus.  *See* AT 152-70.  During that hearing, at which plaintiff was presented by counsel, testimony was received from the plaintiff and David Festa, a vocational expert.  *Id.*

On August 17, 2004, ALJ Antrobus issued a decision upholding the denial of benefits.  AT 11-19.  In arriving at his decision, the ALJ conducted a *de novo* review, employing the now-familiar, five-step test for determining disability, and initially finding at step one that plaintiff has not performed substantial gainful work since the date of his alleged disability onset.  AT 12.  ALJ Antrobus next concluded, based upon the medical evidence in the record, that Cotton suffers from various medical conditions of sufficient severity to surpass the relatively modest step two threshold, including degenerative disc disease of the lumbar spine, disc bulging at L5-S1, and a right hamstring sprain, but concluded that those impairments

were not, either individually or in combination, of sufficient severity as to satisfy the criteria of those presumptively disabling, listed conditions set forth in the governing regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1.  AT 12-14.  Addressing the listed disabilities, the ALJ specifically considered the possibility that plaintiff's condition could potentially be regarded as meeting or equaling sections 1.02A or 1.04, which speak to musculoskeletal impairments involving a major peripheral weight-bearing joint, and spine disorders, respectively, but rejected that possibility based upon the lack of any evidence of a nerve root or spinal cord compromise, spinal arachnoiditis, lumbar spinal stenosis, or the inability to ambulate effectively.  AT 14.

The ALJ next reviewed the plaintiff's medical records in order to assess his residual functional capacity ("RFC").  Based upon that evidence, and rejecting a more restrictive RFC assessment of his treating physician, the ALJ concluded that plaintiff retains the RFC to perform the exertional requirements associated with sedentary work, subject to the additional nonexertional limitation that he may only work on a job which would allow him to alternate positions to accommodate his lower back

pain.[5]  AT 16.  Applying that RFC finding to the requirements associated with plaintiff's position as a police sergeant, the ALJ concluded that plaintiff is precluded by virtue of its significant exertional requirements from performing his past relevant work.  AT 16.

Proceeding to step five, and applying the medical-vocational guidelines of the regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "grid") as a framework, the ALJ concluded that based upon the other relevant criteria associated with the plaintiff a finding of not disabled would be directed.  AT 16-17.  Nonetheless, given the additional nonexertional requirement discerned, the ALJ turned to the opinion testimony of a vocational expert to determine whether the additional requirements would preclude the performance of jobs otherwise falling within the sedentary

---

[5]   Sedentary work is defined by regulation as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).  By subsequent ruling, the agency has clarified that sedentary work generally involves periods of standing or walking for a total of two hours in an eight hour work day, with sitting up to a total of approximately six hours in a similar period.  *See* Social Security Ruling 83-10; *see also Halloran v. Barnhart*, 362 F.3d 28, 31 n.3 (2d Cir. 2004).

category.  AT 17.  Based upon the vocational expert's testimony, in which

he opined that a skilled person with plaintiff's characteristics could perform

in certain jobs including, for example, as a desk officer or a complaint

evaluation officer, and additionally noted such jobs exist in sufficient

numbers within the local and national economies as to be considered

available for the plaintiff, the ALJ determined that plaintiff was not disabled

at the relevant times, within the meaning of the Social Security Act.  AT

17.  The ALJ's decision became a final determination of the agency when,

on September 13, 2004, the Social Security Administration Appeals

Council denied plaintiff's request for review of that determination.  AT 3-5.

     B.    <u>This Action</u>

     Plaintiff commenced this action on October 27, 2004.  Dkt. No. 1.

Issue was thereafter joined on February 28, 2005 by the Commissioner's

filing of an answer, accompanied by an administrative transcript of the

proceedings and evidence before the Commissioner.  Dkt. Nos. 7, 8.  With

the submission of a brief on behalf of the Commissioner, filed on June 29,

2005, Dkt. No. 10, but without the benefit of a brief on behalf of the

plaintiff despite passage of the deadline for its submission, this matter is

now ripe for determination and has been referred to me for the issuance of

a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and

Northern District of New York Local Rule 72.3(d).[6]  *See also* Fed. R. Civ.

P. 72(b).

III.   DISCUSSION

    A.   Scope Of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal*

*v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F.

Supp.2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*,

817 F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to

whether the Commissioner applied the proper legal standards, her

decision should not be affirmed even though the ultimate conclusion

reached is arguably supported by substantial evidence.  *Martone*, 70 F.

---

[6]    This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 19, 2001.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Supp.2d at 148.  If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F. Supp.2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)).  To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record.  *Id.*; *Martone*, 70 F. Supp.2d at 148 (citing *Richardson*).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from

its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp.2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp.2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health & Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Retirement Bd.,* 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 644

(2d Cir. 1983).

_____ B.    Disability Determination - The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§

16

404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled".  *Martone*, 70 F. Supp.2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp.2d at 150.

    C.    <u>Evidence in this Case</u>

        1.    <u>ALJ's RFC Finding</u>

The lynchpin of the ALJ's decision is his determination that notwithstanding his impairment, plaintiff is capable of performing the requirements of sedentary work, subject to the additional requirement that he be employed in a position which allows him the opportunity to change positions frequently.  In order for the ALJ's finding of no disability to withstand judicial scrutiny, the RFC finding must therefore draw the support of substantial evidence.  *Martone*, 70 F.Supp.2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F.Supp. 300, 309-10 (E.D.N.Y. 1997).

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue.  20

C.F.R. § 404.1545(a).  An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis.  *Id.*; *Martone*, 70 F.Supp.2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull.  20 C.F.R. § 404.1569a. Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered. 20 C.F.R. § 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).  When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *Martone*, 70 F.Supp.2d at 150 (citing *Ferraris*, 728 F.2d at 587).  An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations.  *Martone*, 70 F.Supp.2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski*, 985 F.Supp. at 309-10.

A review of the record reveals that this RFC finding is supported by substantial evidence.  Plaintiff has reported that he is capable of walking of between twenty and thirty minutes before having to stop and rest.  AT 79.  Plaintiff is also able to use a computer, fix breakfast, care for both his son and his own personal needs, drive, and take his son to sporting events two times weekly.  AT 74-75, 78.

The ALJ's RFC finding particularly draws support from the RFC findings of Dr. Putcha, an orthopedic surgeon.  *See* AT 117.  According to Dr. Putcha, plaintiff is capable of lifting up to a maximum of fifty pounds occasionally and twenty-five pounds frequently; can stand and/or walk, and sit, for six hours in an eight hour work day; and is unlimited in his ability to push and pull.  AT 117.  These findings, made by a state agency review physician appropriately regarded as an expert, and which are fully consistent with the ALJ's sedentary work finding, are entitled to some weight and in this instance are properly regarded as providing substantial evidence supporting the RFC determination.  *Barringer v. Comm'r of Soc. Sec.*, 358 F.Supp.2d 67, 79 (N.D.N.Y. 2005) (Sharpe, J.).

2.   Treating Physician

In arriving at his RFC finding, the ALJ rejected opinions of Dr.

Ramsaroot, plaintiff's treating physician, suggesting Cotton suffers from limitations which are significantly more restrictive than those discerned, and inconsistent with the finding of an ability to perform sedentary work. In order to uphold the Commissioner's determination it is necessary to determine whether that rejection is both properly explained and supported by the record, including the opinions of other medical experts.

Ordinarily, the opinion of a treating physician is entitled to considerable deference, provided that it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.[7]  *Veino*, 312 F.3d at 588; *Barnett*, 13 F. Supp.2d at 316.  Such opinions are not controlling,

---

[7]    The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions from your treating sources . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.   When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

however, if contrary to other substantial evidence in the record, including the opinions of other medical experts. *Halloran*, 362 F.3d at 32; *Veino*, 312 F.3d at 588.  Where conflicts arise in the form of contradictory medical evidence, their resolution is properly entrusted to the Commissioner.  *Veino*, 312 F.3d at 588.

In deciding what weight, if any, an ALJ should accord to medical opinions, he or she may consider a variety of factors including "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]"  See *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527, 416.927).

When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Failure to apply the appropriate legal standards for considering a treating physician's opinions is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of his or her opinions. *Johnson*, 817 F.2d at 985; *Barnett*, 13 F. Supp.2d at 316-17.

Dr. Ramsaroot provided an RFC assessment in September of 2003,

in which she expressed restrictions significantly more limiting than those found by the ALJ to exist, including in connection with plaintiff's ability to lift, stand, walk and sit.  AT 107-11.  In a survey response dated June 28, 2004, Dr. Ramsaroot opined that plaintiff is unable to sit or stand for long intervals, and noted that he must lie down for forty minutes during the day in order to relieve his pain.  AT 147.  Dr. Ramsaroot also reiterated in that response her opinion that plaintiff would be absent from work at least fifty percent of any given month, given his chronic/severe pain.  *Id.*

As was noted by the ALJ, these views of Dr. Ramsaroot appear to be based principally upon the subjective complaints registered to him by the plaintiff, and are not well supported by clinical evidence in the record. It should be noted, for example, that while plaintiff allegedly suffers from constant pain, *see*, *e.g.*, AT 157, which is addressed by pain medication, and although surgery has been discussed, it has neither been recommended nor requested by the plaintiff.  Moreover, in March of 2003, during a period when plaintiff claims to have been disabled, he in fact presented at a hospital emergency room with injuries suffered from playing basketball.  *See* AT 92-100.

The record also reflects that despite plaintiff's claim that he is unable

23

to walk for long periods of times, he admits that he can walk for between twenty and thirty minutes.  AT 79.  Additionally, while plaintiff states that he requires a cane to assist him in walking, he acknowledges that it was only recommended following the October, 1998 injury as part of his discharge plan, and that a cane has neither been specifically prescribed, nor did he even bring one with him to the orthopedic examination performed by Dr. Henderson.  AT 79, 95, 98, 103.  It should further be noted, as the ALJ observed, that plaintiff's visits to his health care providers have been sporadic, at best, with little testing or referral to specialists for follow-up care.  The notes associated with plaintiff's visits reflect, moreover, that during several of them his back pain was not even mentioned.  *See* AT 126-45.

Given the totality of these circumstances, I find that the ALJ's rejection of opinions of plaintiff's treating physician was properly explained, and is supported by substantial evidence.

### 3.    Subjective Pain Complaints

In arriving at his RFC finding, the ALJ also rejected plaintiff's complaints of constant, debilitating pain.  The court must therefore also examine this rejection to determine whether it is properly explained and

supported by the record.

An ALJ must take into account subjective complaints of pain in making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d).  When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant. *Marcus*, 615 F.2d at 27; *Martone*, 70 F. Supp.2d at 151 (citing *Marcus*). Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain.  *See Mimms v. Heckler*, 750 F.2d 180, 185-86 (2d Cir. 1984).  In deciding how to exercise that discretion the ALJ must consider a variety of factors which ordinarily would be relevant on the issue of credibility in any context, including the claimant's credibility, his or her motivation, and the medical evidence in the record.  *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. & Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-28)).  In doing so, the ALJ must reach an independent judgment concerning the actual extent of pain suffered and its impact upon the claimant's ability to work.  *Id.*

When such testimony is consistent with and supported by objective clinical evidence demonstrating that claimant has a medical impairment

which one could reasonably anticipate would produce such pain, it is entitled to considerable weight.[8]  *Barnett*, 13 F. Supp.2d at 316; *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony concerning the intensity, persistence or functional limitations associated with his or her pain is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony.  *Martone*, 70 F. Supp.2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such testimony is rejected, however, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to

---

[8]    In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence. *Martone*, 70 F. Supp.2d at 151 (citing *Brandon v. Bowen,* 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review.  *Aponte v. Sec'y, Dep't of Health & Human Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984).

It may be, as plaintiff asserts, that he does suffer from some degree of discomfort as a result of his back condition.  The fact that he suffers from discomfort, however, does not automatically qualify him as disabled, since "disability requires more than mere inability to work without pain." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).  It is also true that plaintiff requires the opportunity to shift positions periodically in order to address his back pain.  Such a requirement, however, is not inconsistent with sedentary work; as the Second Circuit has noted, "[t]he regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight."  *Halloran*, 362 F.3d at 33.

Plaintiff's pain complaints, as was the case in connection with opinions of his treating physician, were eschewed by the ALJ principally upon the basis of Cotton's daily activities and the fact that they are unsupported by clinical evidence in the record. In evaluating plaintiff's complaints of pain the ALJ made note of plaintiff's testimony regarding his daily activities, finding that while convinced that the plaintiff did suffer from some degree of back pain his complaints in that regard were inflated, and his claim of total disability was neither credible nor consistent with evidence in the record. The ALJ noted that despite claims of chronic pain plaintiff has treated solely and conservatively with medication, without resort to surgery or hospitalization. Indeed, the record is silent as to whether other forms of intervention, including physical therapy or consultation with pain clinic professionals, were ever considered or discussed.

Obviously, prominent in the ALJ's credibility finding is the observation that plaintiff was apparently engaged in playing basketball in the spring of 2003, when his ankle was injured, as well as plaintiff's own statement that he is able, among other things, to walk twenty to thirty minutes at a time. These facts, coupled with the relatively modest nature

of clinical findings and lack of any serious consideration of surgical intervention or referral to a specialist for evaluation, convince me that the Commissioner properly found plaintiff's allegation of debilitating pain not to be entirely credible.

### 4.   Step Five Determination

After determining that, based upon his RFC, plaintiff is incapable of returning to his past relevant work, at step five of the sequential analysis the ALJ first turned to use of the grid as a framework.  Ordinarily, the Commissioner can meet his burden in connection with the fifth step of the relevant disability test by utilizing the grid.  *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986).  The grid takes into consideration a claimant's RFC, as well as his or her age, education and work experience, in order to determine whether he or she can engage in substantial gainful work in the national economy.  *Id.* Whether or not the grid should be applied in order to make a step five determination presents a case-specific inquiry which depends on the particular circumstances involved.  *Bapp*, 802 F.2d at 605.  If a plaintiff's situation fits well within a particular classification, then resort to the grid is appropriate.  *Id.*  If, on the other hand, nonexertional impairments,

including pain, significantly limit the range of work permitted by exertional limitations, then use of the grid is inappropriate, in which case further evidence and/or testimony is required.[9]  *Rosa*, 168 F.3d at 78; *Bapp*, 802 F.2d at 605-06.

In this instance the application of plaintiff's characteristics to the grid would have warranted a finding of no disability.  Given plaintiff's complaints of back and right side pain and the resulting need to change positions for increased comfort, the ALJ concluded that plaintiff suffers from a nonexertional limitation, characterized by him as mild to moderate. AT 17.  The ALJ therefore turned to a vocational expert to determine whether the additional nonexertional limitation of the need to change positions would alter that determination.

It is well established that elicitation of testimony from a vocational expert is a proper means of fulfilling the agency's burden at step five of the disability test to establish the existence of jobs in sufficient numbers in the national and regional economy that plaintiff is capable of performing.

---

[9]   As one court has explained, "[a] nonexertional limitation is one imposed by the claimant's impairments that affect [his or] her ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments and pain." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997) (citing 20 C.F.R. § 404.1569(a), (c)).

*Bapp*, 802 F.2d at 604-05; *Dumas*, 712 F.2d at 1553-54; *Dwyer v. Apfel*, 23 F. Supp.2d 223, 229-30 (N.D.N.Y. 1998) (Hurd, M.J.) (citing *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)); *see also* 20 C.F.R. §§ 404.1566, 416.966. Use of hypothetical questions to develop the vocational expert's testimony is also permitted, provided that the questioning precisely and comprehensively includes each physical and mental impairment of the claimant accepted as true by the ALJ. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). If the factors set forth in the hypothetical are supported by substantial evidence, then the vocational expert's testimony may be relied upon by the ALJ in support of a finding of no disability. *Id.*

Based upon a hypothetical question posed by the ALJ, fully consistent with substantial evidence in the record, the vocational expert found that there were jobs in sufficient numbers in the local and national economies which plaintiff could perform, notwithstanding his limitations. *See* AT 165-66. Since the hypothetical question posed to the vocational expert was supported by substantial evidence, the resulting finding of no disability based upon that testimony is well supported.

IV.   SUMMARY AND RECOMMENDATION

The plaintiff in this action clearly suffers from a lumbar spine condition which causes him to experience pain, and for which he receives a prescription pain medication.  The evidence in the record, however, belies plaintiff's claim that the pain is sufficiently debilitating as to preclude his ability to perform even sedentary work in jobs which permit frequent changes in position.  In this regard, the contrary opinions of plaintiff's treating physician – based largely upon the plaintiff's subjective statements – as well as his own testimony regarding the limitations which he experiences, were properly rejected in favor of opinions of a state orthopedic consultant, and that rejection was both properly explained and is supported by substantial evidence in the record.

Based upon the foregoing, it is therefore

RECOMMENDED that the defendant's motion for judgment on the pleadings be GRANTED, the Commissioner's finding of no disability AFFIRMED, and plaintiff's complaint DISMISSED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within ten (10) days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roland v. Racette*, 984 F.2d 85 (2d Cir. 1993).

     IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy of this Report and Recommendation upon the parties by regular mail.

David E. Peebles
U.S. Magistrate Judge

G:\socialsecurity\cotton.wpd

33